**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

KRISTIE A. MASCARELLA                           CIVIL ACTION NO.

VERSUS                                          13-CV-642-SDD-RLB

CPLACE UNIVERSITY SNF, LLC
d/b/a AFFINITY NURSING & REHAB
CENTER; CPLACE COLONIAL RC, LLC
d/b/a COLONIAL CARE RETIREMENT
CENTER; and TRADITIONS SENIOR
MANAGEMENT, INC.

## RULING

This matter is before the Court on the *Motions for Summary Judgment*[1] by

Defendants, CPlace University SNF, LLC, d/b/a Affinity Nursing & Rehab Center

("Affinity"), CPlace Colonial RC, LLC, d/b/a Colonial Care Retirement Center ("Colonial

Care"), and Traditions Senior Management, Inc. ("Traditions"), collectively the

"Defendants".  Plaintiff Kristie A. Mascarella ("Plaintiff") has filed *Oppositions*[2] to which

Defendants filed *Reply* briefs.[3]  For the following reasons, the Court finds that the

motion by Traditions should be denied, and the motion by all Defendants should be

granted in part and denied in part.

## I.    FACTUAL BACKGROUND

Plaintiff in this case suffers from spina bifida and is confined to a wheelchair.  It is

undisputed that Plaintiff has a "disability" as defined by the Americans with Disabilities

---

[1] Rec. Doc. Nos. 19 & 20.  Traditions Senior Management, Inc. joined in the first motion and filed a separate motion on the grounds that it claims it was not Plaintiff's employer and did not hold the management contract over the co-Defendants during the time of Plaintiff's employment.
[2] Rec. Doc. Nos. 24 & 25.
[3] Rec. Doc. Nos. 28 & 29.

Act[4] ("ADA") and the Louisiana Employment Discrimination Law[5] ("LEDL"). Plaintiff began working at Colonial Care in Baton Rouge in August of 2008. On October 31, 2011, CPlace Colonial RC, LLC acquired Colonial Care and became Plaintiff's employer, and Plaintiff contends Traditions Senior Management, Inc. ("Traditions") was hired to manage the operations.[6] During this time, Plaintiff was the Executive Director of Assisted Living and the head manager of the Assisted Living Facility at Colo9nial Care.[7] Plaintiff's duties consisted of supervising several employees, making personnel decisions, interacting with residents, hiring and training PCAs, handling admissions, maintaining charts for State surveys, handling disciplinary issues with PCAs, and managing issues with residents and their families.[8]

Plaintiff boasts an extensive background in healthcare administration. Plaintiff received her Bachelor's Degree in healthcare administration in 2006 and completed an internship at St. Clare Manor nursing home that same year which required the completion of 170 hours of work.[9] Between 2006 and 2008, Plaintiff volunteered at St. Joseph Hospice for experience.[10] In 2012, Plaintiff completed her Administrator in Training (AIT) study and became a licensed Nursing Home Administrator. She also obtained her Master's degree in healthcare administration.[11]

Plaintiff contends that, without warning, she was demoted to Admissions Coordinator and transferred to Affinity in March of 2012. At the time of this transfer,

---

[4] 42 U.S.C. § 12101 *et seq.*
[5] La. R.S. 23:301 *et seq.*
[6] Rec. Doc. No. 25-1, pp.6-7 (Deposition of Sheryl Albin, p. 23, lines 24-25 through p. 24, lines 1-2).
[7] Rec. Doc. No. 24-2, pp. 24-25 (Deposition of Kristie Mascarella, pp. 32-33).
[8] *Id.*
[9] *Id.* at pp. 26-28 (Deposition of Kristie Mascarella, pp. 34-36).
[10] *Id.*
[11] *Id.* at pp. 28-30 (Deposition of Kristie Mascarella, pp. 36-38).

Plaintiff contends Affinity was being managed by Traditions.[12]  Plaintiff contends that Affinity was a much less desirable facility, that as Admissions Coordinator at Affinity, her job duties drastically changed in that she no longer had any management or supervisory responsibility, had little interaction with residents, and had duties limited to administrative paperwork.[13]  Plaintiff claims that she was told the company was "restructuring" and that she was being replaced by a nurse.[14]  However, Plaintiff contends that she was not replaced by a nurse; rather, she contends she was replaced by Kim Vicknair, an employee who lacked any experience managing an assisted living facility and who was an Admissions employee, not a nurse.[15]  Vicknair was allegedly later replaced by Andrea Ford who is also not a nurse.[16]

Plaintiff maintains that her performance as the Executive Director at Colonial Care was excellent and that she never received complaints from residents or her superiors.  Plaintiff claims that, as Colonial Care's Director of Assisted Living, she significantly reduced the facility's number of deficiencies; however, following her transfer/demotion, she claims that she received numerous complaints from Colonial Care residents and their families that the facility was being poorly managed since her departure.[17]

When Plaintiff began working at Affinity in March 2012, she contends there was no handicap accessible parking.  Although there was a handicap parking space in the

---

[12] Colonial Care and Affinity are owned by to separate LLC's. CPlace University SNF, LLC does business as Affinity, whereas CPlace Colonial RC, LLC does business as Colonial Care. The record is not fully developed regarding the relationship between the LLC's or the care facilities. However, the summary judgment evidence reveals that Traditions managed both facilities at relevant time periods.

[13] *Id.* at pp. 41 & 44 (Deposition of Kristie Mascarella, pp. 66 & 72).

[14] *Id.* at p. 36 (Deposition of Kristie Mascarella, p. 61).

[15] *Id.* at p.11 (Deposition of Kristie Mascarella, p. 19). *See also* Rec. Doc. No. 24-4, p. 12 (Deposition of Sheryl Albin, p. 35).

[16] *Id.* at p. 13 (Deposition of Sheryl Albin, p. 36).

[17] Rec. Doc. No. 24-6 (Declaration of Kristie A. Mascarella).

back of the lot painted blue, Plaintiff claims it was not truly handicap accessible because it was not wide enough to get her wheelchair out of her car.[18] Plaintiff contends that she made repeated requests to her supervisors and managers to provide a handicap accessible parking space.[19] Plaintiff further claims that, eventually, the maintenance director painted a traditional parking space located in front of the parking lot with blue lines; however, this did not solve Plaintiff's problem as the space remained too narrow to remove her wheelchair from her vehicle and allow her room to maneuver.[20] Plaintiff claims that, on June 1, 2012, several months after her transfer to Affinity and after several requests for a handicap accessible parking space, there was still no proper handicap accessible space provided to her. On that date, Plaintiff again requested a space wide enough to remove her wheelchair from her vehicle. Plaintiff does not know the exact date but claims that sometime after this June 1, 2012 request, she was finally accommodated with a handicap accessible parking space.[21]

Plaintiff further claims that, while at Affinity, she did not have access to a handicap accessible restroom. Plaintiff acknowledges that the facility did have a handicap accessible restroom, but she contends this restroom was for residents rather than employees, and Plaintiff was not able to use it.[22] Plaintiff also contends that, on her tour of Affinity on her first day at the facility, Vermonica, the Director of Nursing, advised Plaintiff against using that restroom because of concerns regarding the resident's hygiene.[23] Some witnesses testified that the resident's handicap restroom

---

[18] Rec. Doc. No. 24-2, pp. 16-18 (Deposition of Kristie Mascarella, pp. 24-26).
[19] *Id.* at pp. 7-8 (Deposition of Kristie Mascarella, pp. 14-15).
[20] *Id.* at 17-18 (Deposition of Kristie Mascarella, pp. 25-26).
[21] *Id.* at 17-21 (Deposition of Kristie Mascarella, pp. 25-29).
[22] *Id.* at pp. 49-50 (Deposition of Kristie Mascarella, pp. 80-81).
[23] *Id.*

was not always clean and was used by residents with communicable diseases.[24] Because of the limitations due to her disability, Plaintiff contends she could not stand and hover over the toilet and would, therefore, have to touch several unclean surfaces in the residents' restroom.[25] Plaintiff also notes that Directors, nurses, and PCAs had access to two employee bathrooms not used by residents; however, it is Plaintiff's belief that neither of these restrooms were handicap accessible.[26]

Plaintiff claims that she made requests for a handicap accessible restroom for her use to several supervisors and managers at Affinity, including RB Bridges, Sheryl Albin, Wade Canty, and Donna Duplantis.[27] With respect to this request, Wade Canty, one of Plaintiff's superiors, testified that they "looked into what could be done, but I don't recall what other steps were taken."[28] Canty testified that he did not recall if the situation was ever resolved, and he could not recall ever doing anything in response to this request.[29] Thus, Plaintiff contends that her only real restroom option was to use the bathroom in her office. Counsel for Plaintiff vividly describes the hardship this placed on her:

> Her wheelchair did not fit through the doorway. [Mascarella declaration]. So every time Mascarella used the bathroom, she had to close her office door, get undressed in her office, park her wheelchair as close to the toilet in the doorway as she could, and try to slide down to the toilet from her wheelchair. [Mascarella declaration]. The toilet was much lower than her wheelchair, which made it extremely difficult for Mascarella to get back up to the seat of her wheelchair. [Mascarella declaration]. Mascarella cannot stand at all, so she had to try and pull herself up with her arms to get back to the wheelchair. [Mascarella declaration].[30]

---

[24] *Id.* at pp. 51-52 (Deposition of Kristie Mascarella, pp. 82-83); Rec. Doc. No. 24-3, pp. 7-8 (Deposition of Wade Canty, pp. 22-23); Rec. Doc. No. 24-5, p. 12 (Deposition of RB Bridges, p. 53).

[25] *Id.*; Rec. Doc. No. 24-6 (Declaration of Kristie A. Mascarella).

[26] *Id.* at p. 48 (Deposition of Kristie Mascarella, p. 77).

[27] *Id.* at p. 8 & 49 (Deposition of Kristie Mascarella, pp. 15 & 80).

[28] Rec. Doc. No. 24-3, p. 9 (Deposition of Wade Canty, p. 24).

[29] *Id.* at pp. 9-10 (Deposition of Wade Canty, pp. 24-25).

[30] Rec. Doc. No. 24, p. 6.

Plaintiff contends that, when nothing was done to accommodate her restroom request for a handicap bathroom, she suggested to Canty that she could manage better with a handicapped toilet, available at Home Depot, which would be taller than a regular toilet and closer to the level of her wheelchair.[31] Plaintiff claims she was told that the toilet was ordered, but when she asked about it, she was always told "I don't know" or "I have to get back with you."[32] Plaintiff contends her restroom accommodation requests remained unresolved at the time of her termination.

Without warning, Plaintiff was "laid off" on August 8, 2012.[33] Plaintiff claims she was told that the facility was not getting enough admissions to justify a full-time admissions person.[34] Plaintiff further claims that she was never warned that she was not admitting enough residents, never reprimanded or disciplined for same, and never warned that her job was in jeopardy for this reason. Subsequently, Plaintiff filed this lawsuit.

Defendants have moved for summary judgment on all of Plaintiff's claims arguing that: (1) Plaintiff's Louisiana claim regarding her transfer is untimely; (2) Plaintiff cannot show that her transfer to Affinity was an adverse employment action because she did not suffer any loss in pay, benefits, or hours, and because her duties were "roughly" the same;[35] (3) Plaintiff cannot establish the *prima facie* element that she was replaced; (4) Plaintiff has offered no evidence of pretext for the legitimate nondiscriminatory reasons for her transfer and layoff; (5) Plaintiff's accommodation claims are moot because she was provided a handicap parking space and she had access to a readily accessible

---

[31] Rec. Doc. No. 24-2, pp. 47-48 (Deposition of Kristie Mascarella, pp. 78-79).
[32] *Id.* at p. 49 (Deposition of Kristie Mascarella, p. 80).
[33] *Id.* at p. 52 (Deposition of Kristie Mascarella, p. 83).
[34] *Id.* at p. 54 (Deposition of Kristie Mascarella, p. 85).
[35] Rec. Doc. No. 19-2, p. 5.

handicap restroom which she chose not to use; (6) Plaintiff fails to show that she was retaliated against because of her accommodations requests; and (7) Plaintiff fails to present evidence to support her claim of intentional infliction of emotional distress.

Traditions joined in this motion but also filed a separate motion for summary judgment arguing that it was never Plaintiff's employer during the relevant time period involved in this lawsuit. The Court will address Traditions' motion first.

## II.    LAW AND ANLYSIS

### A.  Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[36]  In assessing whether a dispute to any material fact exists, the Court considers all of the evidence in the record but must refrain from making credibility determinations or weighing the evidence.[37]  A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case."[38]  If the moving party satisfies its burden, "the non-moving party must show that summary judgment is inappropriate by setting 'forth specific facts showing the existence of a genuine issue concerning every essential component of its case.'"[39]  However, the non-moving party's burden "is not

---

[36] Fed. R. Civ. P. 56(a).
[37] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).
[38] *Guerin v. Pointe Coupee Parish Nursing Home*, 246 F.Supp.2d 488, 494 (5th Cir. 2003)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25, 106 S.Ct. at 2552)).
[39] *Rivera v. Houston Independent School Dist.*, 349 F.3d 244, 247 (5th Cir. 2003)(quoting *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)).

satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."[40]

Notably, "[a] genuine issue of material fact exists, 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[41]  All reasonable factual inferences are drawn in favor of the nonmoving party.[42]  However, "[t]he Court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."[43]  "Conclusory allegations unsupported by specific facts … will not prevent the award of summary judgment; 'the plaintiff [can]not rest on his allegations … to get to a jury without any "significant probative evidence tending to support the complaint."'"[44]

### B. Traditions' *Motion for Summary Judgment*

Traditions contends that it was not Plaintiff's "employer" for purposes of the ADA during any of the relevant time period in this case.  Traditions claims that Louisiana Management Holdings was the management company engaged by CPlace Colonial RC, LLC and CPlace University SNF, LLC, not Traditions.[45]  Traditions further claims that supervisors and managers RB Bridges, Wade Canty, and Sheryl Albin all worked for Louisiana Management Holdings during the relevant time frame.[46]  Traditions

---

[40] *Willis v. Roche Biomedical Laboratories, Inc.,* 61 F.3d 313, 315 (5th Cir. 1995)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[41] *Pylant v. Hartford Life and Accident Insurance Company*, 497 F.3d 536, 538 (5th Cir. 2007)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

[42] *Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).

[43] *RSR Corp. v. International Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).

[44] *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994)(quoting *Anderson*, 477 U.S. at 249).

[45] Rec. Doc. No. 20-2, p. 3, citing to *Statement of Material Facts Not Genuinely In Dispute*, Rec. Doc. No. 20-1, ¶¶ 2 & 6.

[46] *Id.*, citing to *Statement of Material Facts Not Genuinely In Dispute*, Rec. Doc. No. 20-1, ¶3.

acknowledges that RB Bridges is now the Chief Operating Officer of Traditions but, prior to this position, Bridges was the regional director of operations and the regional vice president of Louisiana Management Holdings.[47] Traditions contends Plaintiff never worked for Traditions during the time it held management contracts for CPlace Colonial or CPlace University;[48] thus, it cannot be liable to Plaintiff for the claims asserted.

Plaintiff opposed this motion arguing that Traditions has failed to produce any evidence setting forth the specific dates that Louisiana Management Holdings was in control versus the time that Traditions was in control. Plaintiff also points to the documents presented by the Defendants in this case which show relevant employment documents pertaining to Plaintiff on Traditions letterhead. Specifically, Plaintiff was issued a Status Change Notice on February 19, 2012, indicating Plaintiff's change in pay, and this form shows Traditions' logo on top of the page.[49] Another Status Change Notice dated March 26, 2012 was issued to Plaintiff with the same Traditions logo at the top of the page.[50] Plaintiff's final Status Change Notice issued to Plaintiff on August 8, 2012, indicating her layoff, is identical to the previous two notices in every way except that the logo does not appear on this notice; curiously, no company logo of any kind appears on this document.[51]

Plaintiff cited to a number of other exhibits; however, Traditions objected to several of these exhibits (several of which are screenshots of websites) for lack of

---

[47] *Id.*, citing to *Statement of Material Facts Not Genuinely In Dispute*, Rec. Doc. No. 20-1, ¶ 5.
[48] *Id.* at p. 4, citing to *Statement of Material Facts Not Genuinely In Dispute*, Rec. Doc. No. 20-1, ¶¶ 1, 2, 6, & 7.
[49] Rec. Doc. No. 25-2.
[50] Rec. Doc. No. 25-4.
[51] Rec. Doc. No. 25-5.

authentication and hearsay.  The Court has not considered any of the exhibits to which Traditions made an objection in deciding this motion.

The law in the Fifth Circuit is clear that, even if a company is not a plaintiff's formal employer, it may still be covered under the ADA if it acted as a "joint employer."[52]

> A company becomes "a joint employer when it, 'while contracting in good faith with an otherwise independent company, has retained for itself sufficient control of the terms and conditions of employment of the employees who are employed by the other employer.'" *Boutin*, 730 F.Supp.2d at 680 (quoting *Virgo,* 30 F.2d at 1360). Because the Fifth Circuit has not formally defined the control factors to consider, this Court will follow the approach of at least two district courts in this Circuit and use the factors set forth by the Second Circuit. *See Boutin*, 730 F.Supp.2d at 680 (citing *AT & T*, 67 F.3d at 451); *Jones v. TV Minority Co.*, No. 3:07–cv–513–WHB–LRA, 2008 WL 4279581, at *4 (S.D.Miss. Sept.11, 2008) (citing *AT & T,* 67 F.3d at 451), *aff'd sub nom.  Jones v. Norfolk S. Co.,* 348 F.App'x 970 (5th Cir. 2009) (per curiam). Those five factors are "whether the alleged joint employer (1) did the hiring and firing; (2) directly administered any disciplinary procedures; (3) maintained records of hours, handled the payroll, or provided insurance; (4) directly supervised the employees; or (5) participated in the collective bargaining process." *AT & T*, 67 F.3d at 451 (citing *Clinton's Ditch Coop. Co. v. NLRB,* 778 F.2d 132, 138–39 (2d Cir.1985)).[53]

There is a lack of evidence with respect to some of the factors to be considered; however, because the Court must view the facts and evidence presented in the light most favorable to the Plaintiff on this motion, the Court finds that Traditions is not entitled to summary judgment on this issue.  There is ample evidence which reveals genuine issues of disputed fact regarding the nature and extent of control Traditions may have had over Plaintiff's employment.   In its *Reply* brief, Traditions attempts to make light of the Status Change Notices issued to Plaintiff under the Traditions logo

---

[52] *EEOC v. Valero Refining-Texas, L.P.*, No. 10-CV-398, 2013 WL 1168620 at *3 (S.D. Tex. Mar. 13, 2013).

[53] *Id.* at *4.  This Court will apply the joint employer test for the same reason set forth by the *Valero* court.

calling them "tangential actions … insufficient to establish either a joint employer relationship or single business enterprise."[54]  The Court disagrees.

First, the Court must ask why the Traditions logo appears on <u>earlier</u> Status Change Notices and not Plaintiff's final notice if, in fact, Traditions had no connection to Plaintiff's employment at any time?   Second, the Traditions logo on documentation affecting Plaintiff's employment status, at the very least, suggests possible control and an overlap in time, both of which are denied by Traditions.   Additionally, Traditions made no attempt to respond to Plaintiff and provide documentation of the actual dates that Traditions became the management contractor in place of Louisiana Management Holdings.   Traditions appears to rely completely on the testimony of its employees Bridges, Albin, and Canty in support of its unequivocal assertion that these employees "worked for Louisiana Management Holdings during the relevant time frame."[55] However, the actual deposition testimony cited in support of this statement is not so unequivocal.

RB Bridges testified that he had previously worked for Louisiana Management Holdings and currently works for Traditions; however, he could not recall how long he had been with Traditions.[56]   When specifically asked if Louisiana Management Holdings and Traditions were related in any way, he responded:   "I don't know the ownership structure."[57]   He likewise did not know who owns Traditions.[58]   Later in the deposition, the following exchange took place:

---

[54] Rec. Doc. No. 29, p. 3.
[55] Rec. Doc. No. 20-1, ¶ 1.
[56] Rec. Doc. No. 20-3, p. 7 (Deposition of RB Bridges, p. 6).
[57] *Id.*
[58] *Id.*

| Q: | Okay. How many employees did Louisiana Management Holdings have? |
|---|---|
| A: | I don't know. I don't work for them. |
| Q: | Is there any relationship between Louisiana Management Holdings and Traditions Senior Management? |
| A: | I don't know. |
| Q: | Who would know that? |
| A: | I really don't know.[59] |

As the Chief Operating Officer of Traditions, Bridges' answers strain credulity. The Court cannot make credibility determinations and find facts at the summary judgment stage; however, Bridges' testimony along with the employment records submitted by the parties, show that fact issues exist as to whether Traditions exercised control of Plaintiff's employment. The testimony of Canty and Albin likewise supports this finding. Canty was asked who employed Plaintiff while at Affinity, and he responded that he "would have to think Louisiana Management Holdings."[60] When asked if Traditions ever employed the Plaintiff, Canty responded, "I do not know."[61] Albin testified that Louisiana Management Holdings and Traditions were "the same people" and clarified this to mean "you know, the same management company. It was just, I guess, a different way that they structured."[62] When Albin was asked if she knew whether Plaintiff was ever employed by Traditions, she answered: "I mean, I – I'm assuming. I can't speak factual to that."[63]

Based on the evidence considered by the Court, it appears that Louisiana Management Holdings and Traditions may have been sufficiently interrelated to satisfy the "joint employer" test. The record evidence fails to conclusively establish that the two

---

[59] *Id.* at p. 17 (Deposition of RB Bridges, p. 36).
[60] Rec. Doc. No. 20-5, p. 7 (Deposition of Wade Canty, p. 16).
[61] *Id.* at p. 8.
[62] Rec. Doc. No. 24-4 (Deposition of Sheryl Albin, p. 11).
[63] *Id.* (Deposition of Sheryl Albin, p. 27).

entities were Plaintiff's "joint employer"; however, the evidence is collectively adequate to create a dispute of fact on this issue. Accordingly, the *Motion for Summary Judgment*[64] by Traditions is DENIED.

### C. *Motion for Summary Judgment* by All Defendants

#### 1. ADA and LEDL Claims

Plaintiff alleges that her transfer/demotion and ultimate termination violate the ADA and LEDL. "The ADA is a federal anti-discrimination statute designed to remove barriers which prevent qualified individuals with disabilities from enjoying the same employment opportunities that are available to persons without disabilities."[65] Pursuant to the ADA, "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."[66] Louisiana's version of the ADA, the LEDL, provides that an employer cannot "[d]ischarge or otherwise discriminate against an otherwise qualified disabled person with respect to compensation or the terms, conditions, or privileges of employment on the basis of a disability when it is unrelated to the individual's ability to perform the duties of a particular job or position."[67] Both the ADA and LEDL employ similar language, and the United States Court of Appeals for the Fifth Circuit has stated that, when interpreting Louisiana's anti-discrimination laws, it looks to federal

---

[64] Rec. Doc. No. 20.
[65] *Taylor v. Principal Fin. Group, Inc.*, 93 F.3d 155, 161 (5th Cir. 1996).
[66] 42 U.S.C. § 12112(a).
[67] La.Rev.Stat. § 23:323(B)(2).

employment discrimination jurisprudence.[68]   Plaintiff claims that her demotion/transfer and termination were discriminatory under the ADA and LEDL, that Defendants failed to make the reasonable accommodations requested in violation of the ADA and LEDL, and that her termination was in retaliation for repeated accommodation requests.   The following claims will be addressed under federal law and jurisprudence interpreting the ADA.  The analysis applies with equal force to Plaintiff's claims under the LEDL.

a.  Discrimination

Plaintiff contends that both her transfer, which she argues was a demotion, and her ultimate termination were because of her disability.  To establish a *prima facie* case of disability discrimination, a plaintiff must demonstrate:  "(1) that [s]he has a disability; (2) that [s]he was qualified for the job; [and] (3) that [s]he was subject to an adverse employment decision on account of h[er] disability."[69]

It is undisputed that Plaintiff is disabled within the meaning of the ADA and that she was qualified for the position.  However, Defendants contend Plaintiff has failed to carry her burden because the transfer did not constitute an adverse employment action, she was not replaced by anyone, and there is no evidence of pretext for her termination.

1.  *Plaintiff's Transfer to Affinity*

The parties dispute whether Plaintiff's transfer to Affinity and change in job title constituted an adverse employment action.   To determine whether an action by an

---

[68] *Baker v. Fedex Ground Package Sys.*, 278 F. App'x 322, 328 (5th Cir. 2008).

[69] *E.E.O.C. v. LHC Group, Inc.* 773 F.3d 688, 697 (5th Cir. 2014)(citing *Zenor v. El Paso Healthcare System, Ltd.*, 176 F.3d 847, 853 (5th Cir. 1999)).  Defendants argue the replacement prong in their brief; however, the Fifth Circuit has removed that prong from a *prima facie*  case of disability discrimination according to *LHC Group.*

employer constitutes an adverse employment action,[70] this Court will use "the 'ultimate employment decision' test that [Fifth Circuit] precedents require: '[A]dverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating.'"[71] The Fifth Circuit has held that "[a]n employment action that does not affect job duties, compensation, or benefits is not an adverse employment action under Title VII."[72] An employer's action may constitute an adverse employment action if it "makes the job objectively worse."[73] Additionally, "[a] job transfer that includes a shift change that involves changes in duties or compensation or can be objectively characterized as a demotion may be an adverse employment action ... ."[74] A transfer can be characterized as a demotion when it involves a transfer from a more prestigious position to a less prestigious one, particularly if the employer has traditionally used such transfers as a form of discipline or where the new position involves "**significantly** different duties."[75] A purely lateral transfer is one that "does not involve a demotion in form or substance" or that is "[a] transfer involving no reduction in pay and no more than a minor change in working conditions... ."[76]

Defendants contend Plaintiff's transfer from director of assisted living at the Colonial Care to director of admissions at Affinity was not an adverse employment action because Plaintiff suffered no loss in pay, benefits, or hours, and they claim her

---

[70] The Fifth Circuit has held that it applies the *McDonnell Douglas* framework to cases brought under the ADA; therefore, Title VII precedent interpreting an "adverse employment action" applies to cases brought under the ADA. *McInnis v. Alamo Community College Dist.*, 207 F.3d 276, 279 (5th Cir. 2000).

[71] *Watkins v. Paulsen,* 332 F. App'x 958, 959–60 (5th Cir. 2009).

[72] *Banks v. E. Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003) (internal citations omitted).

[73] *Hunt*, 277 F.3d at 770 (internal citations omitted).

[74] *Id.* (internal citations omitted).

[75] *Id.* (citing *Sharp v. City of Houston*, 164 F.3d 923, 933 (5th Cir.1999); *Forsyth v. City of Dallas*, 91 F.3d 769, 774 (5th Cir.1996; *Click v. Copeland*, 970 F.2d 106, 109 (5th Cir.1992)) (emphasis added).

[76] *Burger v. Cent. Apartment Mgmt., Inc.*, 168 F.3d 875, 879 (5th Cir.1999) (citing *Williams v. Bristol–Myers Squibb Co.*, 85 F.3d 270, 274 (7th Cir.1996)).

job responsibilities were "roughly the same."[77]  Plaintiff acknowledges that she did not suffer a loss in pay, but she claims she suffered various substantive losses in all other aspects of her job.  Not only did Plaintiff suffer the parking and restroom problems described above, she also claims that her job title changed, she was no longer a supervisor, she was in a less desirable facility, and she was given mostly administrative paperwork.  Plaintiff contends this transfer was more than a minor change in working conditions.

Based on the record, the Court finds that there is a genuine issue of material fact in dispute regarding whether Plaintiff's transfer constituted an adverse employment action under the law.  Because a reasonable trier-of-fact could find that Plaintiff's transfer was a demotion, the Court cannot find that Plaintiff failed to carry her burden on this element of her *prima facie* case.   The Court does find, however, that Plaintiff has failed to present evidence that her transfer to admissions director at Affinity was "because of" her disability.

Defendants contend that, with respect to the transfer, they made a legitimate business decision to have a nurse in the position of Director of Assisted Living. Defendants further contend that this was a non-discriminatory business decision, and it had nothing to do with Plaintiff's disability.  Further, Defendants argue that the Plaintiff has failed to rebut the evidence of a legitimate business decision with evidence of pretext.

Plaintiff counters that the transfer decision was pretextual because Defendants did not replace her with a nurse as claimed.  Plaintiff contends she was replaced as

---

[77] Rec. Doc. No. 19-2, p. 5.

Executive Director of Assisted Living by Kim Vicknair, who was not a nurse. Plaintiff further contends Vicknair was succeeded as Director by another employee who was also not a nurse. Considering her job qualifications and the excellent job she claims she was performing, Plaintiff argues there is sufficient evidence of pretext that this transfer was because of her disability.

At issue here is whether Plaintiff's transfer was motivated by discriminatory intent, not whether it was correct from a business, ethical, or personal perspective,[78] and there is no evidence that it was. Plaintiff has offered no evidence that her transfer was related to her disability. All of Plaintiff's disability accommodation requests and complaints came after her transfer to Affinity.

A business decision to employ a nurse in the position of Executive Director of Assisted Living is a legitimate non-discriminatory reason for the Plaintiff's transfer. However, whether a nurse actually succeeded the Plaintiff as the Executive Director of Assisted Living at Colonial Care upon her transfer to Affinity is disputed. If the Plaintiff was not in fact replaced, as Executive Director of Assisted Living, with a nurse, as the Defendant's claim, a reasonable jury could conclude that the Defendants stated reason for the transfer was pretextual.

### 2. *Plaintiff's Termination*

There is no dispute that Plaintiff's ultimate termination is an adverse employment action; however, Defendants contend they have offered a legitimate, non-discriminatory reason for Plaintiff's termination. The Defendants contend that Plaintiff's position was eliminated due to low admissions. Plaintiff offers as pretext evidence her numerous,

---

[78] *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 899 (5th Cir. 2002)("[An employer] is entitled to be unreasonable so long as it does not act with discriminatory animus"); *see also Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995).

and allegedly ignored, requests for accommodations, the different treatment she received as compared to other employees, and the fact that she was never warned about low admissions or given the opportunity to increase admissions to save her job.

The Court finds the Plaintiff has offered sufficient evidence of pretext for her termination. It is for the trier of fact to determine whether Plaintiff's accommodation requests were adequately addressed by the Defendants, and whether their decision to terminate Plaintiff was related to her disability. The Court also finds that Plaintiff has shown evidence of pretext because there is no evidence before the Court that Plaintiff had been performing negatively in her position or was ever warned or otherwise counseled that if admissions continued to decline, her position was in jeopardy. Particularly troubling is the testimony of Canty, when asked if he believed Plaintiff was discriminated against because of her disability, he responded: "That, I don't know."[79] Canty was asked if it was his opinion that Plaintiff was subjected to disability discrimination, and he responded: "I mean, honestly, I really – I don't – I don't have an opinion one way or the other on that."[80] This question should be resolved by a jury. The Court finds that Plaintiff has presented a genuine issue of material fact as to the Defendants' motivation in terminating her employment, and this matter is inappropriate for resolution on summary judgment.

### b. Accommodation Claim

Plaintiff also claims that the Defendants failed to accommodate her disability as required by the ADA. Defendants have moved for summary judgment on this claim arguing that Plaintiff's accommodation claim is moot because it is undisputed that

---

[79] Rec. Doc. No. 24-3, pp. 11-12 (Deposition of Wade Canty, pp. 26-27).
[80] *Id.* at p. 13 (Deposition of Wade Canty, pp. 28).

Plaintiff was provided a handicap parking spot at Affinity, and it is undisputed that Plaintiff had access to a wheelchair accessible bathroom at Affinity but chose not to use it. Because material factual disputes abound on this issue, summary judgment is not proper on the accommodation claim.

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability...."[81] The term "discriminate" includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability ... unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity."[82] The ADA defines "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."[83] "Reasonable accommodation" may include "job restructuring, part-time or modified work schedules...."[84] The "undue hardship" analysis requires courts to consider factors including "the nature and cost of the accommodation;" the size of the facility and the business entity involved in terms of financial resources, personnel, and geography; and the type of operations including composition, structure, and function.[85]

"Once an employee makes a request for reasonable accommodations, the employer is obligated by law to engage in an 'interactive process' or 'a meaningful

---

[81] 42 U.S.C. § 12112(a).
[82] *Id.* at § 12112(b)(5)(A).
[83] *Id.* at § 12111(8).
[84] *Id.* at § 12111(9)(B).
[85] *Id.* at § 12111(10)(B).

dialogue with the employee to find the best means of accommodating that disability."[86]

In order to prove a claim of discrimination under the ADA, a plaintiff must satisfy the elements of 42 U.S.C. § 12112(b)(5): (1) she had a disability; (2) she was qualified for the job; (3) her employer knew of the disability; (4) she requested an accommodation; (5) a reasonable accommodation existed that would have allowed her to perform the essential functions of the job; and (6) her employer failed to provide a reasonable accommodation.[87]

There is no dispute that (1) through (5) set forth above have been satisfied. The parties dispute whether Defendants failed to provide Plaintiff a reasonable accommodation. Also disputed is whether Defendants properly engaged in the required interactive process to determine the appropriate accommodations.

A "reasonable accommodation" is not necessarily "the employee's preferred accommodation."[88] Instead, the accommodation need only "meet the job-related needs of the individual being accommodated."[89] The employer has the final say and is free to "choose the less expensive accommodation or the accommodation that is easier for it to provide."[90] Employees and employers "should engage in flexible, interactive discussions to determine the appropriate accommodation."[91] The "responsibility for the interactive process is shared."[92] "When an employer's unwillingness to engage in a

---

[86] *Tribble v. Ouachita Parish Police Jury*, 939 F.Supp.2d 626, 632, 2013 WL 1411810, at *5 (W.D. La. 2013)(citing *E.E.O.C. v. Chevron Phillips Chem. Co.,* 570 F.3d 606, 621 (5th Cir. 2009)).

[87] 42 U.S.C. § 12112(b)(5)(A); *Heard v. United Parcel Service, Inc.*, No. 09–1950, 2012 WL 399213, at *8 (W.D.LA. Feb. 7, 2012); *Riel v. Elec. Data Sys. Corp.*, 99 F.3d 678, 683 (5th Cir. 1996); *Burch v. Coca–Cola Co.*, 199 F.3d 305, 315 (5th Cir. 1997).

[88] *E.E.O.C. v. Agro Distribution, LLC*, 555 F.3d 462, 471 (5th Cir. 2009) (citing *Hendrick v. Western Reserve Care System*, 355 F.3d 555, 457 (6th Cir. 2004)).

[89] *Id.* (quoting 29 C.F.R. pt. 1630, App., § 1630.9).

[90] *Id.*

[91] *E.E.O.C., supra.*, at 471.

[92] *Loulseged v. Akzo Nobel Inc.*, 178 F.3d 731, 736 (5th Cir. 1999).

good faith interactive process leads to a failure to reasonably accommodate an employee, the employer violates the ADA."[93]  By the same token, if the process breaks down because of an employee's action, "an employer cannot be found to have violated the ADA."[94]

Defendants maintain that Plaintiff has no accommodation claim because she was provided with a handicap parking spot at Affinity which was widened to accommodate her vehicle.  Plaintiff concedes that she was eventually provided a handicap space, but she claims that it was after several months of repeated requests.  This Court has held that a delay in providing a reasonable accommodation under the ADA can constitute a failure to accommodate:  "[O]nce an employee makes a request for an accommodation, the employer is required to engage in the interactive process, and '[a] party that obstructs or delays the interactive process is not acting in good faith.'"[95]  Although a two month delay is not unreasonable as a matter of law, the Court finds that, based on the circumstances surrounding the requests, Plaintiff has demonstrated a genuine issue of material fact as to whether Defendants engaged in the interactive process in good faith. The issues of timeliness and good faith are questions for the jury to decide.

The Court also finds that disputed material facts exist regarding Plaintiff's access to a handicap restroom.   Defendants contend that Plaintiff is procedurally barred from

---

[93] *Id.*

[94] *Id.*

[95] *Schilling v. Louisiana DOTD*, No. 12-661, 2014 WL 3721959 at * 9 (M.D. La. July 28, 2014)(quoting *Manthos v. Jefferson Parish,* 2008 WL 3914988, at *6 (E.D.La. Aug. 21, 2008)(quoting *Beck v. Univ. of Wis. Bd. of Regents,* 75 F.3d 1130, 1135 (7th Cir.1996)). *See also, Loulseged v.  Akzo Nobel Inc.,* 178 F.3d 731, n. 6 (5th Cir.1999) ("The panel in *Beck* noted that a party 'that obstructs or delays the interactive process' may be charged with its breakdown. In *Beck* and many employment cases, the employee continues working in a capacity arguably needing accommodation while the interactive process is ongoing. An employer that dragged its feet in that situation could force the employee to work under suboptimal conditions, 'simply document the employee's failures,' and use the employee's difficulties as an excuse to terminate her."(internal citations omitted)).

making this argument because they claim that her *Declaration*, which states that she could not use the public bathroom, "directly contradicts, without explanation"[96] Plaintiff's deposition testimony that the handicapped public restroom was available to her, but she chose not to use it. This statement is a disingenuous overgeneralization of Plaintiff's testimony and declaration. Moreover, Plaintiff's contention that she could not use the public restroom was not "without explanation," as she clearly detailed why she believed that it was unsafe for her to do so. Plaintiff's belief that she "could not use" this restroom is buttressed by her testimony that she was told on her first day at Affinity by Affinity's Director of Nursing that she did not recommend Plaintiff using this restroom because of the potential cleanliness/disease issues.[97] Furthermore, Defendants cite the following law in their *Opposition*: "A reasonable accommodation is defined as 'making existing facilities **used by employees** readily accessible to and usable by individuals with disabilities.'"[98] The handicap accessible restroom Defendants expected Plaintiff to use was not "used by employees" but rather was used by the residents. It is undisputed that employees at Affinity had separate restroom facilities. Additionally, the evidence in the record shows that Plaintiff made requests for a portable toilet, available at Home Depot, which was arguably a lesser burden and expense than reconstructing an existing restroom; however, this request appears to have been ignored. For a myriad of reasons, the Court finds that a rational trier of fact could find that the accommodation provided to Plaintiff was not reasonable under the law and facts of this case. Defendants are not entitled to summary judgment on Plaintiff's failure to accommodate claim.

---

[96] Rec. Doc. No. 28, p. 2.
[97] Rec. Doc. No. 24-2, p. 51 (Deposition of Kristie Mascarella, p. 82).
[98] Rec. Doc. No. 19-2, p. 7, quoting 42 U.S.C. § 1211(9)(A) (emphasis added).

2. Retaliation Under the ADA

Defendants also move for summary dismissal of Plaintiff's ADA retaliation claim. To establish a *prima facie* case of retaliation under the ADA or Title VII, a plaintiff must show that: (1) she participated in an activity protected under the statute; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse action.[99] "If the employee establishes a *prima facie* case, the burden shifts to the employer to state a legitimate, non-retaliatory reason for its decision. After the employer states its reason, the burden shifts back to the employee to demonstrate that the employer's reason is actually a pretext for retaliation,"[100] which the employee accomplishes by showing that the adverse action would not have occurred "but for" the employer's retaliatory motive.[101] In order to avoid summary judgment, the plaintiff must show "a conflict in substantial evidence" on the question of whether the employer would not have taken the action "but for" the protected activity.[102]

A plaintiff alleging retaliation may satisfy the causal connection element by showing "[c]lose timing between an employee's protected activity and an adverse action against him."[103] Such temporal proximity must generally be "very close."[104] While there is no bright line rule, this Court has found, for example, that "a time lapse of up to four

---

[99] *Feist v. Louisiana, Dept. of Justice, Office of the Attorney General*, 730 F.3d 450, 454 (5th Cir. 2013)(citing *McCoy v. City of Shreveport,* 492 F.3d 551, 556–57 (5th Cir. 2007) (Title VII); *Seaman v. CSPH, Inc.*, 179 F.3d 297, 301 (5th Cir.1999)). (ADA).

[100] *Id.*, quoting *LeMaire v. Louisiana*, 480 F.3d 383, 388–89 (5th Cir. 2007) (internal citation omitted).

[101] *Id.*, quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, ——U.S. ——, 133 S.Ct. 2517, 2533, 186 L.Ed.2d 503 (2013) (Title VII); *Seaman*, 179 F.3d at 301 (ADA).

[102] *Id.*, quoting *Long v. Eastfield College,* 88 F.3d 300, 308 (5th Cir. 1996) (internal quotation marks omitted).

[103] *Id.*, quoting *McCoy*, 492 F.3d at 562.

[104] *Id.*, quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001).

months" may be sufficiently close,[105] while a five month lapse is not close enough without other evidence of retaliation.[106] Such evidence may include an employment record that does not support dismissal, or an employer's departure from typical policies and procedures.[107]

There is no dispute that Plaintiff has established the first two elements of her *prima facie* case. Defendants contend, however, that Plaintiff cannot establish a causal connection between her termination and her requests for accommodation because they met Plaintiff's requests with reasonable accommodations. Defendants offer the reduction in force as the legitimate, non-discriminatory reason for her termination and argue that Plaintiff has no evidence of pretext for this decision.

For the same reasons discussed above regarding Plaintiff's discrimination and failure to accommodate claims, the Court finds that there are disputed fact issues which preclude summary judgment in favor of the Defendant on the retaliation claim. Plaintiff's termination did come in close proximity to her protected activity, *i.e.*, continued requests for an appropriate handicap restroom which arguably remained unresolved at the time of her termination. Plaintiff has offered uncontested evidence that she was a good, if not excellent, employee and that she was never warned or counseled that she needed to increase admissions to avoid a possible layoff. There is sufficient evidence in the record from which a reasonable trier of fact could find that Plaintiff's termination was in retaliation for her accommodation requests/complaints. Summary judgment is denied on this issue.

---

[105] *Id.*, quoting *Evans v. Houston*, 246 F.3d 344, 354 (5th Cir. 2001).
[106] *Id.*, citing *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 472 (5th Cir. 2002).
[107] *Id.* at 454-455, citing *Schroeder v. Greater New Orleans Fed. Credit Union*, 664 F.3d 1016, 1024 (5th Cir. 2011).

### 3. Transfer Claim under the LEDL & IIED

Defendants also moved for summary judgment on Plaintiff's transfer/demotion claim under the LEDL and Plaintiff's alleged intentional infliction of emotional distress ("IIED") claim.[108]  Defendants contend that Plaintiff's transfer claim under the LEDL is prescribed and that she has failed to carry her burden on the IIED claim.  Plaintiff failed entirely to address or respond to these issues in her *Opposition*.  Plaintiff's failure to offer any argument or jurisprudence to dispute the Defendants' arguments on these issues is fatal to these particular claims. In the Fifth Circuit, arguments not raised in opposition to a motion are waived.[109]  Summary judgment in favor of the Defendants is granted as to these specific claims.

---

[108] Plaintiff's *Complaint* does not set forth a claim for intentional infliction of emotional distress under Louisiana law; she does claim that the Defendants acted with "malice and reckless indifference" to her rights (¶ 19), and she does seek compensatory damages for "severe emotional and mental anguish, anxiety, depression, humiliation…" (¶ 20).  The Court does not read this request for compensatory damages as an IIED claim but addressed it as set forth above out of an abundance of caution.  However, Plaintiff is not required to plead an IIED claim to recover compensatory damages for emotional distress or mental anguish.  "To recover emotional distress damages, a plaintiff must show specific evidence of emotional distress." *Cherry v. Shaw Costal, Inc.*, 2012 WL 5364228, at *5 (M.D. La. Oct. 31, 2012)(quoting *Giles v. General Elec. Co.*, 245 F.3d 474, 488 (5th Cir. 2001)).  While a plaintiff must have "more than vague allegations to establish existence of the injury," *Id.*, a plaintiff is not required to have corroborating testimony, and plaintiff's own testimony "may be sufficient to prove mental damage but only if the testimony is 'particularized and extensive' enough to meet the specificity requirement." *Hitt v. Connell*, 301 F.3d 240, 250-51 (5th Cir. 2002)(citation omitted).

[109] *See Texas Commercial Energy v. TXU Energy, Inc.*, 413 F.3d 503, 510 (5th Cir. 2005)(citing *Norton v. Bank One, N.A.*, 387 F.3d 426, 435 (5th Cir. 2004).

## III. CONCLUSION

For the reasons set forth above, the *Motion for Summary Judgment*[110] by Defendants, CPlace University SNF, LLC, d/b/a Affinity Nursing & Rehab Center, CPlace Colonial RC, LLC, d/b/a Colonial Care Retirement Center, and Traditions Senior Management, Inc. is GRANTED, in part and DENIED in part. The *Motion for Summary Judgment*[111] by Traditions Senior Management, Inc. is DENIED.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana, on <u>May 20, 2015</u>.


_____

**JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[110] Rec. Doc. No. 19.
[111] Rec. Doc. No. 20.