**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| KRISTIE A. MASCARELLA | CIVIL ACTION NO. |
| VERSUS | 13-CV-642-SDD-RLB |
| CPLACE UNIVERSITY SNF, LLC<br>d/b/a AFFINITY NURSING & REHAB<br>CENTER; CPLACE COLONIAL RC, LLC<br>d/b/a COLONIAL CARE RETIREMENT<br>CENTER; and TRADITIONS SENIOR<br>MANAGEMENT, INC. | |

**RULING**

This matter is before the Court on the *Motion and Application for Court Award of Front Pay and Prejudgment Interest on Back Pay Award*[1] by Plaintiff Kristie A. Mascarella ("Plaintiff") and the *Motion to Reduce Award in Accordance with 42 U.S.C. 1981*[2] filed by the Defendants, CPlace University SNF, LLC, d/b/a Affinity Nursing & Rehab Center ("Affinity") and Traditions Senior Management, Inc. ("Traditions") (or "the Defendants"). The parties filed *Oppositions*[3] to the respective motions. For the following reasons, the Court finds that Plaintiff's motion should be granted in part and denied in part, and Defendant's motion should be denied.

**I.    FACTUAL BACKGROUND**

Plaintiff in this case brought suit against the Defendants alleging violations of the Americans with Disabilities Act ("ADA") and the Louisiana Employment Discrimination

---
[1] Rec. Doc. No. 62.
[2] Rec. Doc. No. 63.
[3] Rec. Doc. Nos. 65 & 66.
28116

Law. A jury trial was held in this matter from July 20, 2015 through July 22, 2015. The jury returned a verdict in Plaintiff's favor, finding that she proved by a preponderance of the evidence that the Defendants failed to reasonably accommodate her disability, and that the Plaintiff would not have been terminated but for her requests for accommodations.[4] The jury awarded Plaintiff $100,000.00 in past pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life.[5] The jury awarded Plaintiff $100,000.00 for future pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life.[6] For lost wages and benefits from August 8, 2012 to the date of the verdict, the jury awarded $90,000.00.[7] However, the jury also found that Plaintiff failed to mitigate her damages and reduced her award by $25,000.00.[8] Lastly, the jury awarded the Plaintiff $275,000.00 in punitive damages.[9]

Plaintiff has filed a post-trial motion for the Court to award front pay consistent with the testimony offered by Plaintiff's expert at trial and prejudgment interest on the back pay award. Defendants have moved to reduce the jury's award pursuant to 42 U.S.C. § 1981a.

## II. FRONT PAY AWARD

Plaintiff moves the Court to exercise its discretion and award Plaintiff front pay consistent with the expert testimony offered by Dr. Patton Culbertson at trial. The Defendant contends that the jury's finding that Plaintiff failed to mitigate her damages bars her recovery of front pay.

---

[4] Rec. Doc. No. 58.
[5] *Id.*
[6] *Id.*
[7] *Id.*
[8] *Id.*
[9] *Id.*

28116

Although front pay results in a monetary award, it is a form of equitable rather than legal relief and should be determined by the court rather than the jury.[10] A court will consider an award of front pay or other monetary damages only if it concludes that reinstatement is inappropriate.[11] A district court must consider an employment discrimination plaintiff's failure to mitigate damages in determining the extent to which, if at all, a front pay award is appropriate.[12] "When analyzing a failure to mitigate argument in the context of front pay, the Fifth Circuit has considered the plaintiff's mitigation efforts during the back pay period."[13]

Based on the jury's finding that Plaintiff failed to mitigate her damages, the Court declines to award Plaintiff front pay.

## III. PREJUDGMENT INTEREST

Plaintiff seeks prejudgment interest in the amount of $2,553.80 on the back pay award of $90,000.00. Defendants contend that any award of back pay prejudgment interest should be based on the award of $65,000.00 after the $25,000.00 reduction for failure to mitigate. The Court agrees that prejudgment interest on the back pay award is required to make Plaintiff whole; however, the Court agrees that interest should be applied to the award of $65,000.00. Plaintiff shall have ten (10) days from the date of this *Ruling* to submit a proposed judgment in accordance herewith and pursuant to 28

---

[10] *Carpenter v. Tyler Indep. School Dist.*, 429 F.Supp.2d 848, 852 (E.D. Tex. 2006)(citing *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1022 n. 33 (1st Cir.1979); *Taylor v. Home Ins. Co.*, 777 F.2d 849, 859–60 (4th Cir.1985)).
[11] *Id.*, citing *Julian v. City of Houston*, 314 F.3d 721, 728 (5th Cir. 2002); *Maxfield v. Sinclair Int'l,* 766 F.2d 788, 796 (3d Cir.1985); *O'Donnell v. Georgia Osteopathic Hosp., Inc.*, 748 F.2d 1543, 1551–52 (11th Cir. 1984).
[12] *Id.*, citing *Hansard v. Pepsi–Cola Metro. Bottling Co.*, 865 F.2d 1461, 1470 (5th Cir.1989).
[13] *Hardy v. City of Tupelo, Miss.*, No. 1:08-CV-28-SA-JAD, 2010 WL 730314 at *5 (N.D. Miss. Feb. 25, 2010)(citing *Sellers v. Delgado College*, 902 F.2d 1189, 1196 (5th Cir. 1990) (because plaintiff did not exercise reasonable diligence to obtain substantially equivalent employment during the back pay period, front pay denial was appropriate).
28116

U.S.C. § 1961.

## IV. MOTION TO REDUCE AWARD UNDER 42 U.S.C. § 1981a

Defendants move to reduce the compensatory and punitive damages awarded by the jury in accordance with 42 U.S.C. § 1981a. The limitations on compensatory and punitive damages in employment discrimination cases are found in 42 U.S.C. § 1981a(b), which provides:

> (3) Limitations
>
> The sum of the amount of compensatory damages awarded under this section for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, and the amount of punitive damages awarded under this section, shall not exceed, for each complaining party-
>
> (A) in the case of a respondent who has more than 14 and fewer than 101 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $50,000;
>
> (B) in the case of a respondent who has more than 100 and fewer than 201 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $100,000; and
>
> (C) in the case of a respondent who has more than 200 and fewer than 501 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $200,000; and
>
> (D) in the case of a respondent who has more than 500 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $300,000.

"'The statute limits allowable damages based on the number of employees employed by the employer in the current year, but it is silent about how to identify the relevant employer. Thus, when there is more than one entity involved, either through a parent/subsidiary or a joint-employer relationship, the question becomes: Which

28116

entities' employees are counted for purposes of calculating the damages cap?'"[14] "'The doctrine of limited liability creates a strong presumption that a parent corporation is not the employer of its subsidiary's employees.'"[15] "However, a plaintiff may overcome that presumption by proving that the parent company and its subsidiary are a single enterprise."[16] Following the testimony and evidence presented on this issue at trial, the Court granted the Plaintiff's Rule 50(a) motion finding that the evidence established that Traditions and Affinity were a single business enterprise and Plaintiff's joint employer. This is the law of the case.

Relying on a 2003 case from the Southern District of New York,[17] the Defendants claim in a footnote that, for purposes of determining the statutory damages cap, the size of the employer is not based on the number of employees in all of the parent company's subsidiaries, but only on the number of employees of the entitles that were actually found to have control over the employee's employment.[18] This case is not binding on the Court. Even if it were, the jury was not asked to make a finding as to which entity had control over the Plaintiff, and the Court has already found that Traditions and Affinity were a single business enterprise. The Court found that the evidence at trial established that Traditions' upper management employee R.B. Bridges made the ultimate employment decision as to Plaintiff, and that he directed the company's response to her requests for accommodation. Indeed, R.B. Bridges testified at trial that

---

[14] *U.S.E.E.O.C. v. IESI Louisiana Corp.*, 720 F. Supp.2d 750, 756 (W.D. La. 2010), quoting *Vance v. Union Planters Corp.*, 279 F.3d 295, 297 (5th Cir. 2002) (" *Vance II* ").
[15] *Id.*, quoting *Lusk v. Foxmeyer Health Corp.*, 129 F.3d 773, 778 (5th Cir. 1997).
[16] *Id.* (*See Johnson v. Crown Enterprises, Inc.*, 398 F.3d 339, 344 (5th Cir. 2005)).
[17] *Parrish v. Sollecito*, 280 F.Supp.2d 145 (S.D.N.Y. 2003).
[18] Rec. Doc. No. 63-1, p. 2, n.2.

28116

Traditions has over 500 employees nationwide[19] with nine facilities in the State of Louisiana.[20] Thus, under § 1981a, the $300,000 cap applies to Plaintiff's ADA claims.

## V.   ALLOCATION OF DAMAGES

As the Fifth Circuit has not addressed this issue, both parties invite the Court to follow conflicting jurisprudence regarding the ability to allocate damages between Plaintiff's federal and state claims. The Court recognizes a split in the district court decisions in the Fifth Circuit. The Court is inclined to follow the Louisiana Easter District court's decision in *Barrios v. Kody Marine, Inc.*[21] *Barrios* involved a sexual harassment claim brought under Title VII and Louisiana's antidiscrimination law. The case was tried before a jury, and the jury awarded the plaintiff $25,000.00 in compensatory damages and $100,000.00 in punitive damages.[22] The defendants moved for remitter based on the 42 U.S.C. § 1981a cap limiting the plaintiff's recovery to $50,000.00. The court noted, however, that there is no cap on damages under Louisiana law, but punitive damages are unavailable.[23]

> The *Barrios* court stated:
>
> Although the Fifth Circuit has yet to decide the issue of whether a district court can allocate sexual harassment damages between federal and state claims, other federal courts have considered the issue. Most of those other federal courts have concluded that a district court has discretion to allocate damages between federal and state claims.[24]

---

[19] Rec. Doc. No. 59, pp. 41-42.
[20] *Id.* at p. 16.
[21] No. 99-1623, 2000 WL 775067 (E.D. La. June 14, 2000).
[22] *Id.*
[23] *Id.* at *2, citing La. R.S. § 23:303(A).
[24] *Id.*, (*See Passantino v. Johnson & Johnson Consumer Products, Inc.*, 212 F.3d 493 (9th Cir. 2000); *Martini v. Federal National Mortgage Assoc.*, 178 F.3d 1336, 1349-50 (D.C.Cir.1999), *cert. dismissed*, __ U.S. __, 120 S.Ct. 1155, 145 L.Ed.2d 1065 (2000); *Kimzey v. Wal-Mart Stores, Inc.*, 107 F.3d 568, 576 (8th Cir.1997); *Luciano v. Olsten Corp.*, 912 F.Supp. 663, 675 (E.D.N.Y.1996), *aff'd on other grounds*, 110 F.3d 210 (2d Cir.1997). *But see Oliver v. Cole Gift Centers, Inc.*, 85 F.Supp.2d 109, 113 (D.Conn. 2000) (rejecting allocation in favor of applying federal cap to total recovery under both federal and state
28116

The *Barrios* court also relied heavily on the Ninth Circuit's decision in *Passantino v. Johnson & Johnson Consumer Products, Inc.*, wherein the court held that 42 U.S.C. § 2000e-7 explicitly prohibits limiting state remedies.[25] The Ninth Circuit further held that applying the statutory cap to the total award, as opposed to the district court's allocation method,

> would conflict with the district court's general obligation to preserve lawful jury awards when possible, The jury's entire compensatory damage award was lawful under state law, and its punitive damage award was lawful under federal law (subject to any constitutionally valid limitation imposed by the statutory cap). An allocation that would serve to reduce lawfully awarded damages would fail to respect the jury's verdict and conflict with the purpose and intent of one or both statutes. Thus, we hold that the district court's allocation decision was not an abuse of discretion, and furthermore that, in circumstances such as these, subjecting the whole damage award to Title VII's cap would be inconsistent with Title VII's provisions.[26]

Adopting the reasoning and analysis of the Ninth Circuit, the *Barrios* court held as follows:

> As noted above, Title VII explicitly prohibits limitation of state remedies. Moreover, neither Title VII nor Louisiana law prohibit or mandate allocation of damages between federal and state antidiscrimination claims. Accordingly, the Court finds, as did the Ninth Circuit, that it is most logical to assume that the jury awarded the same damages on both the federal and state claims. Because the damages are fungible, it is most consistent with the intent of the jury to permit Plaintiff to recover the maximum amount possible, thereby allocating $25,000 in compensatory damages to Plaintiff's state law discrimination claim and $50,000 in punitive damages to Plaintiff's federal discrimination claim.[27]

The First Circuit likewise allows district courts to allocate damages between state

---

law but also qualifying that, under the facts of the case, "the plaintiff [was] adequately compensated by the damage award as capped under the federal scheme")).
[25] *Id.* at *3.
[26] *Id.*, quoting *Passantino*, 212 F.3d at 510.
[27] *Id.* at *4.
28116

and federal claims.  In *Rodriguez-Torres v. Caribbean Forms, Mfr.*,[28] the court stated its circuit's reasoning:

> Courts have settled on this method for two primary reasons. First, where the jury makes an unapportioned award, there is no basis for believing that the jury favored applying the damages to the federal over the state claim. Indeed, the most plausible reading of the jury's verdict in such circumstances is that the jury wanted the specified sum awarded to the plaintiff no matter the count to which the award was eventually assigned. Allocating damages in this fashion is thus consistent with the district court's general obligation to preserve lawful jury awards to the extent possible. *See  Gagliardo*, 311 F.3d at 571; *Passantino*, 212 F.3d at 510. Second, allocating the excess damages to the state law claim respects "the local jurisdiction's prerogative to provide greater remedies for employment discrimination than those Congress has afforded under Title VII." *Martini,* 178 F.3d at 1349–50; *see also* 42 U.S.C. § 2000e–7 ("Nothing in [Title VII] shall be deemed to exempt or relieve any person from any liability, duty, penalty, or punishment provided by any present or future law of any State.").[29]

Faced with the same issue, the Third Circuit has also held that "§ 1981a does not prevent a claimant from recovering greater damages under a state law claim that is virtually identical to a capped federal claim."[30]  The Third Circuit further held that, "subjecting such state law claims to the federal cap would effectively limit a state's ability to provide for greater recovery than allowed under the corresponding federal law. Imposing such a limitation would violate the federal law's prohibition on limiting state remedies.[31]

The Court has not located a Fifth Circuit decision addressing this particular issue, and *Barrios* has not been overruled.  Considering the evidence presented at trial and

---

[28] 399 F.3d 52 (1st Cir. 2005).
[29] *Id.* at 66.
[30] *Gagliardo v. Connaught Laboratories, Inc.*, 311 F.3d 565, 570 (3rd Cir. 2002)(citing *Passantino v. Johnson & Johnson*, 212 F.3d 493, 510 (9th Cir. 2000) (discussing Title VII and the Washington Law Against Discrimination); *Martini v. Fed. Nat'l Mortgage Ass'n,* 178 F.3d 1336, 1349–50 (D.C.Cir. 1999) (discussing Title VII and the District of Columbia Human Rights Act)).
[31] *Id.* at 571 (citing *Passantino*, 212 F.3d at 510; *Martini*, 178 F.3d at 1349–50).

the jury's obvious careful consideration in reaching its verdict, the Court follows *Barrios* and will allocate Plaintiff's damages to preserve the jury award in this case. The Court finds that the award is not excessive and was based on sufficient evidence presented at trial. In awarding $275,000.00 in punitive damages, only $10,000.00 more than the jury awarded in compensatory damages, it is clear to the Court that the jury was mindful of following the Court's Jury Charge which instructed that "[t]he amount of any punitive damages award should bear a reasonable relationship to the harm caused plaintiff."[32] Moreover, the jury's finding that Plaintiff failed to mitigate damages, and its subsequent reduction of her award on that basis, further shows that this jury was thoughtful and acted in good faith in weighing the appropriate award for this Plaintiff.

As the Court held previously, Plaintiff's federal claim award is limited to $300,000.00 by § 1981a. Accordingly, the Court will allocate $240,000.00 in compensatory damages to Plaintiff's state law discrimination claim.

---

[32] Fifth Circuit Pattern Jury Instructions, § 11.14 (2014).

28116

## VI. CONCLUSION

For the reasons set forth above, the *Motion and Application for Court Award of Front Pay and Prejudgment Interest on Back Pay Award*[33] by Plaintiff is GRANTED in part and DENIED in part. The *Motion to Reduce Award in Accordance with 42 U.S.C. 1981*[34] by the Defendants is DENIED. The parties shall jointly submit a proposed judgment in accordance with this opinion within ten days from the date of this *Ruling*.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana, on September 8, 2015.

*Shelly D. Dick*

**JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[33] Rec. Doc. No. 62.
[34] Rec. Doc. No. 63.
28116