UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

KRISTIE A. MASCARELLA                           CIVIL ACTION NO.

VERSUS                                          13-CV-642-SDD-RLB

CPLACE UNIVERSITY SNF, LLC
d/b/a AFFINITY NURSING & REHAB
CENTER; CPLACE COLONIAL RC, LLC
d/b/a COLONIAL CARE RETIREMENT
CENTER; and TRADITIONS SENIOR
MANAGEMENT, INC.

## RULING

This matter is before the Court on the *Motion for Judgment as a Matter of Law, or in the Alternative, Motion for New Trial and Remittitur*[1] filed by the Defendants, CPlace University SNF, LLC, d/b/a Affinity Nursing & Rehab Center ("Affinity") and Traditions Senior Management, Inc. ("Traditions") (or "the Defendants") and the *Motion for New Trial on the Issues of Mitigation and Front Pay*[2] by Plaintiff Kristie A. Mascarella ("Plaintiff"). The parties filed *Oppositions*[3] and *Replies*[4] to the respective motions. For the following reasons, the Court finds that both motions should be denied.

**I.   FACTUAL BACKGROUND**

Plaintiff in this case brought suit against the Defendants alleging violations of the Americans with Disabilities Act ("ADA") and the Louisiana Employment Discrimination

---

[1] Rec. Doc. No. 67.
[2] Rec. Doc. No. 80.
[3] Rec. Doc. Nos. 76 & 84.
[4] Rec. Doc. Nos. 78 & 85.
29464

Law.  A jury trial was held in this matter from July 20, 2015 through July 22, 2015.  The jury returned a verdict in Plaintiff's favor, finding that she proved by a preponderance of the evidence that the Defendants failed to reasonably accommodate her disability, and that the Plaintiff would not have been terminated but for her requests for accommodations.[5]  The jury awarded Plaintiff $100,000.00 in past pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life.[6]  The jury awarded Plaintiff $100,000.00 for future pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life.[7]  For lost wages and benefits from August 8, 2012 to the date of the verdict, the jury awarded $90,000.00.[8]  However, the jury also found that Plaintiff failed to mitigate her damages and reduced her award by $25,000.00.[9]  Lastly, the jury awarded the Plaintiff $275,000.00 in punitive damages.[10]

Both parties previously filed motions requesting relief from the jury's verdict.  The Court issued a *Ruling*[11] on September 8, 2015, addressing these motions.  The *Ruling* is the law of the case and addresses some of the arguments made in the motions currently before the Court; therefore, the Court adopts by reference herein the applicable reasoning and analysis set forth in its September 8, 2015 *Ruling*.

---

[5] Rec. Doc. No. 58.
[6] *Id.*
[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] Rec. Doc. No. 71.
29464

## II. LEGAL STANDARDS

### A. Motion for Judgment as a Matter of Law

When analyzing a motion for judgment as a matter of law, the court must view the evidence in the light most favorable to the nonmoving party, and all reasonable inferences must be drawn in favor of that party.[12] "Judgment as a matter of law is proper when the evidence permits only one reasonable conclusion and the conclusion is contrary to that reached by the jury."[13]

The Court finds that the jury's verdict in this case is reasonable based upon the evidence presented at trial. Therefore, the Court denies Defendants' motion for judgment as a matter of law.

### B. Motion for New Trial and/or To Alter or Amend the Judgment

Trial Courts have the power to grant a new trial when the verdict is "against the weight of the evidence,"[14] or when the trial was unfair.[15] Courts do not grant new trials unless it is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done, and the burden of showing harmful error rests with the party seeking new trial.[16]

Unlike the broad discretion Congress has given to district courts when considering a motion for new trial, a motion to alter or amend serves "the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence and is not the proper vehicle for rehashing evidence, legal theories, or arguments that

---

[12] *See Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 149–50 (2000).
[13] *Otstad v. Oregon Health Sciences Univ.*, 327 F.3d 876, 881 (9th Cir. 2003).
[14] *Gasperini v. Ctr. for Humanities, Inc.* 518 U.S. 415, 433 (1996).
[15] *Scott v. Monsanto Co.*, 868 F.2d 786, 789 (5th Cir.1989).
[16] *National Union Fire Ins. of Pittsburgh, Pa. v. Puget Plastics Corp.*, 735 F.Supp.2d 650 (S.D. Tex. 2010).
29464

could have been offered or raised before the entry of the judgment."[17]   There are three grounds for altering or amending a judgment under Rule 59(e): "(1) an intervening change in controlling law, (2) the availability of new evidence not previously available, or (3) the need to correct a clear error of law or prevent manifest injustice."[18]

The Court finds that neither of the parties have satisfied the standards set forth above.  Both parties essentially ask the Court to reject the jury's proper credibility determinations and weighing of the evidence and substitute its own factual findings and verdict after weighing the credibility of witnesses and the evidence in this case.  The Court declines this invitation to commit error.  Moreover, the Court finds that the jury's verdict was supported by the evidence at trial and the applicable law.  Several of the issues raised by the parties have already been ruled upon by this Court, and the Court's findings in prior oral rulings at trial and its subsequent *Ruling* of September 8 constitute the law of the case.  The Court need not revisit these issues for a third time.

### C.  Alleged Juror Bias

For a defendant to obtain a new trial based on a juror's responses during *voir dire*, the defendant must "first demonstrate that the juror failed to answer honestly a material question on *voir dire*, and then further show that a correct response would have provided a valid basis for a challenge for cause."[19]  "The motives for concealing information may vary, but only those reasons that affect a juror's impartiality can truly be said to affect the impartiality of the trial."[20]

---

[17] *Knight v. Kellogg Brown & Root Inc.*, 333 Fed. Appx. 1, 8 (5th Cir. 2009).
[18] *Williamson Pounders Architects, PC*, 681 F.Supp.2d 766, 767 (N.D.Miss.2008).
[19] *U.S. v. Villalobos*, 601 Fed. Appx. 274, 277 (5th Cir. 2015)(quoting *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984) (establishing the *McDonough* test)).
[20] *Id.*, quoting *McDonough*, 464 U.S. at 556 (internal quotations omitted).
29464

Defendants also alleged they are entitled to a new trial on the grounds that the jury foreperson, Mark Garon, was biased in favor of Plaintiff's counsel Rob Campbell ("Campbell") and failed to disclose his wife's "close" relationship with Campbell's wife. Defendants claim that Garon: "failed to disclose that his spouse and counsel for Plaintiff's spouse were best friends," and "did not disclose that his wife and Mr. Campbell's wife also went to law school together, and had a continuing, close relationship today."[21]

The record reflects that these allegations are patently false. The jury venire was asked very early during *voir dire* whether any potential jurors knew the Plaintiff or her attorneys in any manner whatsoever. Garon candidly responded:

> GARON: I know Rob Campbell. My wife and he and his wife all went to law school together.
>
> THE COURT: Okay. Your wife is an attorney, you said? And do you know him socially, or just know him from the fact that he and your wife suffered through law school together?
>
> GARON: Some socially, but mainly just through the fact they went to law school together.[22]

Clearly, Garon did not fail to disclose that his wife went to school with both Campbell and Campbell's wife. Further, Garon acknowledged that the couples knew each other "some socially." Defendants' subsequent Facebook research revealed Facebook communications between Garon's wife and Campbell's wife resulting in the unfounded assertion by Defendants that Garon's wife and Campbell's wife are "best friends."[23] The Court cannot find such a materially close friendship sufficient to establish juror bias based on the fact that two former law school classmates regularly "like" each

---

[21] Rec. Doc. No. 67-1, p. 16.
[22] *Transcript*, Rec. Doc. No. 69, p. 26, lines 16-23.
[23] Rec. Doc. No. 97-1, p. 16.

29464

other's Facebook posts.  Moreover, there is no evidence of any Facebook interaction between Juror Garon and Campbell whatsoever.

In *Sluss v. Commonwealth*,[24] a convicted criminal defendant appealed his conviction in part on the grounds that two jurors were Facebook friends with the mother of the victim.  The Kentucky Supreme Court rejected the defendant's claim and appropriately noted:

> But "friendships" on Facebook and other similar social networking websites do not necessarily carry the same weight as true friendships or relationships in the community, which are generally the concern during *voir dire*. The degree of relationship between Facebook "friends" varies greatly, from passing acquaintanceships and distant relatives to close friends and family. The mere status of being a "friend" on Facebook does not reflect this nuance and fails to reveal where in the spectrum of acquaintanceship the relationship actually falls. Facebook allows only one binary choice between two individuals where they either are "friends" or are not "friends," with no status in between.
>
> Indeed, some people have thousands of Facebook "friends," … which suggests that many of those relationships are at most passing acquaintanceships. This is further complicated by the fact that a person can become "friends" with people to whom the person has no actual connection, such as celebrities and politicians.[25]  Thus, a Facebook member may be "friends" with someone in a strictly artificial sense.[26]

While obviously not binding, the Court finds the *Sluss* court's analysis regarding Facebook "friendships" directly on point and persuasive in this case.  Because "merely being friends on Facebook does not *per se*, establish a close relationship from which bias or partiality on the part of a juror may reasonably be presumed,"[27] there is insufficient

---

[24] 381 S.W.3d 215 (Ky. 2012).
[25] *Id.* at pp. 222-223 (*See, e.g.*, Robbie Woliver, Lady Gaga and her 10 million Facebook friends: celebrity worship syndrome, Psychology Today (July 3, 2010), http://www.psychologytoday.com/blog/alphabet-kids/201007/lady–gaga–and–her–10–million–facebook–friends–celebrity–worship–syndrome (noting that the singer Lady Gaga has "10 million Facebook friends [who] aren't really her friends").
[26] *Id.* at 223.
[27] *W.G.M. v. State*, 140 So.3d 491, 495 (Crim. App Ala. 8/30/13)(quoting *McGaha v. Commonwealth*, 414 S.W.3d 1, 6 (Ky.2013)(internal quotations marks omitted)).
29464

evidence from which the Court could conclude a bias on the part of Juror Garon based on, not his, but his wife's Facebook communication with, not Campbell, but Campbell's wife. Furthermore, counsel for Defendants was free to exercise a peremptory challenge on Garon to ameliorate any concerns. Defendants' claim of juror bias and/or misconduct is without merit.

### III.  CONCLUSION

For the reasons set forth above, the *Motion for Judgment as a Matter of Law, or in the Alternative, Motion for New Trial and Remittitur*[28] by filed by the Defendants, and the *Motion for New Trial on the Issues of Mitigation and Front Pay*[29] filed by the Plaintiff are DENIED.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on November 23, 2015.

*Shelly D. Dick*

**JUDGE SHELLY D. DICK
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**

---

[28] Rec. Doc. No. 67.
[29] Rec. Doc. No. 80.
29464